**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PERCY ST. GEORGE,**<br><br>Petitioner,<br><br>v.<br><br>**THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA,** et al.,<br><br>Respondents. | CIVIL ACTION<br><br>No. 00-1716 |

**OPINION**

March 30, 2009,

Percy St. George, a Pennsylvania prisoner, petitions for a writ of habeas corpus. United States Magistrate Judge Faith M. Angell has recommended that the petition be dismissed without an evidentiary hearing and that no certificate of appealability ("COA") be issued. *See* Report and Recommendation of Magistrate Judge Faith M. Angell (Doc. No. 72, filed Oct. 10, 2008). Petitioner Percy St. George has filed four separate documents objecting to Magistrate Judge Angell's report and recommendation ("R&R"). *See* Doc. Nos. 74-77.

For the reasons that follow, I do not adopt the R&R. I do, however, concur in the major pronouncements in the R&R. Specifically, I agree with Judge Angell's twin determinations that (1) St. George's habeas petition was timely filed (although, as explained in footnote 6 *infra*, I arrive at this conclusion via a different path), and (2) petitioner "has failed to state a claim which would entitle him to federal habeas corpus relief." *See* R&R at 11. However I am not persuaded that, on the present elaborate and ill-defined record, the prudent course is to dismiss the petition. I conclude that it may be that there lurks in this record a cognizable claim – but one which a *pro se* petitioner has not been able adequately to bring into focus – of ineffective assistance of counsel: namely, that trial counsel was unconstitutionally ineffective in not filing a direct appeal within thirty (30) days of the imposition of petitioner's sentence. Therefore I will direct the Clerk to arrange for the appointment of an attorney to represent the petitioner and to file, as soon as possible, an amended habeas petition on petitioner's behalf. The case is to be remanded to Judge Angell for consideration of the forthcoming amended petition.

## I. FACTUAL AND PROCEDURAL HISTORY

Following a jury trial at the Philadelphia Criminal Justice Center ("CJC") in October, 1997, petitioner was convicted of kidnaping and other crimes. He was sentenced, on December 3, 1997, to a 15-30 year term of incarceration, which he is currently serving. Petitioner's counsel at trial and sentencing, Robert Dixon, failed to file a notice of appeal or any other post-verdict motions on petitioner's behalf. According to petitioner, he requested that Dixon file an appeal.[1]

Petitioner filed a pro se notice of appeal on February 25, 1998. Because his pro se notice of appeal was filed later than thirty days after his sentence was entered, petitioner's notice of appeal was untimely. *See* Pa. R. App. Proc. 903(a).

Petitioner's pro se notice of appeal was returned to him. The returned notice of appeal was unfiled and had a notation stating that the appeal was premature. The docket number on the returned notice of appeal had been crossed out and replaced with the docket number of an unrelated case, still pending trial, in which petitioner was also a defendant. Ironically, it seems that the Clerk of Courts for the Court of Common Pleas, to whom petitioner properly mailed his notice of appeal, had erroneously concluded that petitioner's tardy notice of appeal was premature because the Clerk believed, incorrectly, that petitioner's notice of appeal had been filed in petitioner's other case.

According to petitioner, he then corresponded frequently with the Clerk's office about his appeal.[2] Petitioner claims that, during the course of this lengthy correspondence, he was never told that his appeal had been filed late. In his objections to the R&R, petitioner has produced some of this correspondence, including, *inter alia*, 1) a letter petitioner received from the Clerk of Quarter Sessions's Prison Liaison Unit on March 11, 1998, informing petitioner that his correspondence had been forwarded to the Appeals Unit; 2) a letter that petitioner sent to the Prison Liaison Unit on January 13, 1999, stating that he had heard nothing since his case had been referred to the Appeals Unit, and inquiring as to its progress; and 3) a letter petitioner received from the Criminal Appeal / Post Trial Unit on June 30, 1999, incorrectly informing petitioner that an appeal had already been filed on his behalf by James Divergilis, and urging petitioner to contact

---

[1] Petitioner has also filed a formal complaint against Dixon with the Disciplinary Board of Pennsylvania. He has attached a copy of that complaint to his objections to the R&R. *See* Doc. No. 76. In that complaint, petitioner alleges that the trial judge instructed Dixon to file an appeal; that Dixon informed the trial judge and petitioner that he would file an appeal; and that petitioner requested that Dixon file an appeal at the close of trial.

[2] Petitioner's complete account of this correspondence, as well the chronology of his entire case, appears in his Motion for Issuance of Writ (Doc. No. 51, filed June 25, 2007).

Divergilis.[3]

On June 24, 1999, petitioner filed an application for leave to file an appeal *nunc pro tunc*. After the court failed to act on that application, St. George filed a petition for a writ of mandamus with the Pennsylvania Superior Court. The Superior Court denied this petition on February 29, 2000.

Then, on April 3, 2000, petitioner filed his initial petition for a writ of habeas corpus with this court. On August 15, 2002, this court approved an R&R from Magistrate Judge Charles B. Smith which recommend that St. George be granted leave to amend his petition to address the merits of his claim that his trial counsel had been ineffective for failing to file an appeal. On September 13, 2002, petitioner filed an amended petition. This amended petition, however, failed to properly allege ineffective assistance of counsel ("IAC") by trial counsel; instead, it alleged IAC by trial counsel in an entirely different case, one in which petitioner's counsel did in fact file a notice of appeal.

In the meantime, the respondents forwarded petitioner's June 24, 1999 motion for leave to appeal *nunc pro tunc* to the Commonwealth's PCRA unit, where it was treated as a motion for post-trial relief. Petitioner was appointed PCRA counsel, and that counsel filed an amended PCRA application on behalf of petitioner. On December 30, 2002, having learned that petitioner's case would be heard by the state PCRA unit, I placed petitioner's habeas case in suspense but kept the case on my docket in case "Mr. St. George [did] not obtain his desired outcome at the state level and wish[ed] to again seek relief here." *See* Doc. No. 44.

Petitioner's amended PCRA petition sought reinstatement of his original appellate rights, which the PCRA court granted on April 29, 2004. On April 11, 2006, however, the Superior Court overturned the PCRA court's decision on the grounds that petitioner's PCRA petition had been untimely filed. On October 23, 2006, petitioner moved this court to reopen his case. I granted that request on September 21, 2007, and referred the case to Judge Angell.

## II. DISCUSSION

### *A. Equitable Tolling of the Statute of Limitations*

Absent the doctrine of equitable tolling, petitioner's habeas corpus petition is untimely because petitioner failed to file for post-verdict relief at either the state or federal level within one year of the date that his conviction became final. *See* 28 U.S.C. §

[3] Divergilis was petitioner's counsel in the unrelated case whose docket number the clerk of court mistakenly entered on petitioner's initial pro se notice of appeal. The clerk was, I presume, correct that Divergilis had filed an appeal on petitioner's behalf in petitioner's other unrelated matter.

2244(d).[4] However, "[i]n *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616 (3d Cir.1998), [the Third Circuit] determined that AEDPA's one-year filing requirement is a statute of limitations, not a jurisdictional rule, and thus a habeas petition should not be dismissed as untimely filed if the petitioner can establish an equitable basis for tolling the limitations period." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

In *Brown v. Shannon,* 322 F.3d 768 (3d Cir. 2003), the Third Circuit explained the black letter law of equitable tolling that governs this case:

> "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" *See Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir.1998) (citation omitted). "Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' " *Id.* (citation omitted). Moreover, to be entitled to equitable tolling, "[t]he petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." *Id.* at 618-19 (citations, including internal citation, omitted); *see Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances. If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.") (internal citations and internal footnote omitted).

322 F.3d at 773. Notably, *Brown's* citation to *Valverde* establishes that, in this Circuit, a causal relationship must exist between any extraordinary circumstances and petitioner's failure to file in a timely fashion if equitable tolling is to apply.

The Third Circuit has specifically recognized that equitable tolling "may be appropriate . . . where the court has misled the plaintiff into believing that she had done everything required of her." *Seitzinger v. Reading Hosp. and Medical Center,* 165 F.3d 236, 240 (3d Cir. 1999) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). Relying on that holding, Judge Angell concludes that because "it could be said that" this court "put Petitioner's mind at ease" by suspending, rather than dismissing, petitioner's case pending his state postconviction proceedings, equitable tolling is

[4] Petitioner's conviction became final on January 3, 1998, 30 days after his December 3, 1997 sentencing. *See* 28 U.S.C. § 2244(d)(1).

appropriate. R&R at 8-9.

I respectfully disagree. The R&R neglects to consider that there must be a causal relationship between this court's misleading of petitioner and petitioner's failure to file on time. This court may indeed have wrongly put petitioner at ease in 2002, but petitioner's filing of his petition was tardy as soon as it was filed, i.e., before this court ever issued any order. No statement by this court contributed to petitioner waiting more than a year to file his first motion for postconviction relief, and therefore this court's 2002 Order placing petitioner's case in civil suspense cannot form the basis of a holding that equitable tolling is appropriate here.

However, petitioner is still entitled to equitable tolling because he was misled by the Clerk's failure to properly address his pro se direct appeal.[5] Petitioner filed his pro se notice of appeal less than one year after his conviction became final and before the statutory period for filing for post-conviction relief in Pennsylvania had expired. *See* Pa. Con. Stat. Ann. Tit. 42, § 9545(b) (requiring that a PCRA petition "shall be filed within one year of the date the judgment becomes final"). After continuing to correspond with the Clerk about the clerical errors, petitioner received correspondence – in March of 1998 – informing him that his appeal had been forwarded to the Appeals Unit. Although petitioner's appeal should have been promptly dismissed for its tardiness, which would have put him on notice to apply for postconviction relief, this did not occur until after petitioner took the extraordinary step of filing for a writ of mandamus. Instead, petitioner received a series of mixed signals, none of which properly informed him that because his notice of appeal was late, he could not seek appellate review directly. Because petitioner reasonably relied on the statement that his case was with the Appeals Unit, petitioner is entitled to equitable tolling and his habeas petition was timely filed.[6]

---

[5] Petitioner seems to be attempting to make this argument in his objections to the R&R, but he does so merely by invoking the phrase "equitable tolling" and then listing all of his correspondence with the court, making no clear legal argument. In any event, respondents address this claim of their own accord. *See* Respondents' Response to Petition for Writ of Habeas Corpus at 8-9 (Doc. No. 71-2).

[6] Petitioner's conviction became final one month after his sentencing, on January 3, 1998. *See* note 4, *supra.* Rather than informing petitioner that the appeal had been filed too late, the Clerk of Quarter Sessions informed petitioner that petitioner's correspondence had been forwarded to the appeals unit on March 11, 1998. If the statute of limitations is regarded as equitably tolled beginning on March 11, 1998, then the statute ran for 38 days (from Jan. 3, 1998 until March 11, 1998) and was tolled until, on February 29, 2000, his writ of mandamus was denied by the Superior Court. Petitioner filed his first habeas petition on April 3, 2000; the statute of limitations thus ran for another 33 days between the denial of his writ of mandamus and the filing of his habeas petition. Even if the statute of limitations is viewed as having run yet again from the date

Respondents cite *LaCava v. Kyler,* 398 F.3d 271 (3d Cir. 2005), in support of the argument that petitioner did not exercise the reasonable diligence required for equitable tolling. *LaCava,* however, is distinguishable from the instant matter. LaCava claimed that he was entitled to equitable tolling because he received delayed notice that his petition to appeal the denial of his PCRA petition had been denied. 398 F.3d at 274-75. Petitioner St. George, in contrast, received affirmative assurance that his correspondence had been transferred to the Appeals Unit. The court in *LaCava* held "that LaCava did not exercise the requisite due diligence by allowing more than twenty-one months to lapse from the filing of his petition for allowance of appeal until he inquired with the Pennsylvania Supreme Court's Prothonotary's Office as to its status." 298 F.3d at 277. St. George was far more active in pursuit of his appeal: he consistently inquired of and corresponded with the Clerk's office to check on the status of his case, and he did so less than one month after he filed his pro se notice of appeal. Because St. George diligently pursued his direct appeal and was nevertheless misled, he is entitled to equitable tolling of the statute of limitations.

*B. Ineffective Assistance of Counsel*

Judge Angell is correct that, as a formal matter, petitioner has not alleged a constitutional violation in his amended petition and therefore is not eligible for a writ of habeas corpus relief on the basis of that petition. Petitioner does not properly plead ineffective assistance of his trial counsel in either of his petitions.

However, as this court observed in its August 15, 2002 order granting petitioner leave to amend his first petition, it is possible that there is merit to the claim that petitioner's trial counsel was not constitutionally effective because he failed to file a notice of appeal. Indeed, respondents even acknowledge that "petitioner may have had a viable claim of ineffective assistance of counsel regarding counsel's failure to file a direct appeal on his behalf, had he raised that claim in a timely petition." Docket No. 71-2 at 9. To prove ineffective assistance of counsel, a habeas petitioner must generally show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A petitioner need not show prejudice, however, if it can show that counsel's deficient performance was so incompetent "that it rises to the level of a constructive denial of counsel which can constitute constitutional error without any showing of prejudice." *Id.* at 703 n.2 (citing *United States v. Cronic*, 466 U.S. 648, 659-60 (1984)) (other citations omitted).

---

of the Pennsylvania Supreme Court's denial of petitioner's PCRA petition (April 11, 2006) until petitioner's motion to reopen his habeas case (October 23, 2006), that adds only another 192 days that the statute of limitations ran. In sum, then, because equitable tolling is appropriate based on the Clerk's having misled St. George, the statute of limitations ran for at most 263 days – not a year – between the date petitioner's sentence became final and the date he filed to reopen his habeas petition with this court.

This court's August 15, 2002 order granting petitioner leave to amend his petition was grounded in the concern that petitioner deserved a right to be heard on the claim that he was denied his right to a direct appeal. Petitioner's failure to properly plead IAC in his amended petition shows that petitioner is not capable of adequately representing himself pro se. Accordingly, this court will exercise its discretion to appoint counsel for petitioner. An appropriate order follows.

/s/ Louis H. Pollak
Pollak, J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**PERCY ST. GEORGE**,

Petitioner,

v.

**THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA,** et al.,

Respondents.

CIVIL ACTION

No. 00-1716

**ORDER**

**AND NOW**, this 30 day of March, 2009, after review of the Report and Recommendation of United States Magistrate Judge Faith M. Angell, upon de novo consideration of the objections raised by petitioner Percy St. George, and for the reasons stated in the accompanying Opinion, it is hereby **ORDERED** that:

1. The Report and Recommendation of the Magistrate Judge is **NOT ADOPTED**;

2. The Clerk is directed to arrange for the appointment, as attorney for Mr. St. George, of a member of the Civil Rights Panel; that attorney is requested to file, as soon as possible, an amended petition on behalf of petitioner.

3. The matter is **REMANDED** to Magistrate Judge Angell for further proceedings consistent with this Order.

BY THE COURT:

/s/ Louis H. Pollak
Pollak, J.