UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERCY ST. GEORGE,<br><br>                Petitioner,<br><br>    v.<br><br>THE DISTRICT ATTORNEY OF THE<br>COUNTY OF PHILADELPHIA, et al.,<br><br>                Respondents. | CIVIL ACTION<br><br>No. 00-1716 |

**MEMORANDUM**

      Percy St. George was convicted in a Pennsylvania state criminal court in 1997, but his lawyer did not file an appeal.  So St. George tried to file his own.  Although his *pro se* appeal was untimely, the Pennsylvania courts did not so notify him.  Instead, state officials repeatedly mixed up two of St. George's cases and, as a result, St. George missed his chance to seek collateral relief on the grounds that his trial counsel was ineffective for failing to file an appeal.  In other words, by the time the state's mix-up over the two cases was resolved, Pennsylvania procedural rules barred St. George from seeking reinstatement of his appellate rights.

      St. George now seeks a writ of habeas corpus in this court.  His sole contention is that his trial counsel was ineffective for disregarding St. George's request that an appeal be filed on his behalf.  For the reasons stated below, St. George is entitled to an evidentiary hearing.

I.      Background

Following a jury trial in the Court of Common Pleas of Philadelphia County, petitioner was convicted, in October of 1997, of kidnaping and other crimes. He was sentenced, on December 3, 1997, to a 15–30 year term of incarceration, which he is currently serving. Petitioner's counsel at trial and sentencing, Robert Dixon, failed to file a notice of appeal or any other post-verdict motions on petitioner's behalf. Accordingly, petitioner filed a *pro se* notice of appeal on February 25, 1998. *See* Pet'r's Ex. 1 (Notice of Appeal, Feb. 25, 1998).[1] Because this notice was filed more than thirty days after his sentence was entered, petitioner's notice of appeal was untimely. *See* Pa. R. App. Proc. 903(a).

The Clerk of Court for the appeals unit of the Court of Common Pleas returned the tardy notice of appeal to the petitioner, without having filed it and with a notation stating that the appeal was premature. The docket number on the returned notice of appeal (which petitioner listed as "CP No. 0523")[2] had been crossed out and replaced with the

---

[1] All citations to the petitioner's exhibits are to the exhibits he transmitted to this court on November 14, 2008. Unfortunately, petitioner's current pro bono counsel has attached no exhibits to the amended petition. As a result, the court has been forced to comb through the voluminous state court record in an effort to piece together the procedural history of this case and, in certain instances, has been unable to locate certain filings that are referenced above. Nevertheless, none of the events described above are disputed by respondents.

[2] The complete docket number for petitioner's case is CP No. 9704-0523.1. It is possible that petitioner's failure to include the prefix in his notice of appeal contributed to—but cannot excuse—the confusion that ensued.

docket number of an unrelated case (CP No. 9704-0396), still pending trial, in which petitioner was also a defendant.  *See* Pet'r's Ex. 1 (Notice of Appeal, Feb. 25, 1998). Respondents do not dispute that the Clerk, to whom petitioner properly mailed his notice of appeal, erroneously concluded that petitioner's tardy notice of appeal was premature because the Clerk believed, incorrectly, that petitioner's notice of appeal had been filed in petitioner's other case.

Petitioner then corresponded frequently with the Clerk's office about his appeal. Respondents do not dispute that, during the course of this lengthy correspondence, he was never told that his appeal had been filed late.  Having not gotten any confirmation that his appeal had been filed,[3] petitioner sought to file, on June 24, 1999, an appeal *nunc pro tunc*.  However, the state's confusion between petitioner's two cases persisted when, on June 30, 1999, the Criminal Appeal / Post Trial Unit of the Philadelphia Criminal Justice Center, stated that "An appeal has been filed for you on 5-24-99.  Your attorney is: James Divergilis, Esq."  Pet'r's Ex. 4.  Divergilis was petitioner's trial counsel in case number 9704-0396, not case number 9704-0523.  On July 9, 1999, petitioner wrote back to the appeals unit, again explaining the mix-up and again asking that his application for leave to file an appeal *nunc pro tunc* be filed.  *See* Pet'r's Ex. 5.  After the court failed to act on that application, petitioner filed a petition for a writ of mandamus with the Pennsylvania Superior Court, which was denied on February 29, 2000.

---

[3] *See, e.g.*, Pet'r's Ex. 3 (Letter from St. George to Prison Liason Unit, Jan. 13, 1999) (stating that petitioner had "not heard one word" about the appeal he had filed in February of 1998).

On April 3, 2000, petitioner filed, under 28 U.S.C. § 2254, his initial petition for a writ of habeas corpus with this court. Docket No. 1. On August 16, 2002, this court approved a Report & Recommendation from Magistrate Judge Charles B. Smith, which recommended that St. George be granted leave to amend his petition to address the merits of his claim that his trial counsel had been ineffective for failing to file an appeal. Docket No. 35. On September 13, 2002, petitioner filed an amended petition. Docket No. 37.

In the meantime, on April 10, 2002, the state officials forwarded petitioner's June 24, 1999, motion for leave to appeal *nunc pro tunc* to the Commonwealth's PCRA unit, where it was treated as a motion for collateral relief. On July 2, 2002, petitioner was appointed PCRA counsel, who filed an amended PCRA application on behalf of petitioner that requested reinstatement of petitioner's appellate rights due to trial counsel's ineffectiveness. On December 30, 2002, having learned that petitioner's case would be heard by the state PCRA unit, I placed petitioner's habeas case in suspense but kept the case on my docket in case "Mr. St. George [did] not obtain his desired outcome at the state level and wish[ed] to again seek relief here." Docket No. 44.

On April 29, 2004, the amended PCRA petition was granted by Judge D. Webster Keogh, acting as the PCRA court, and petitioner's appellate rights were reinstated *nunc pro tunc*. Petitioner's PCRA counsel then filed a notice of appeal on May 21, 2004. On November 5, 2004, the Criminal Appeals Unit of the Court of Common Pleas denied petitioner's *nunc pro tunc* appeal, ruling that (1) the trial court had not erred in denying petitioner's motion to suppress the photographic array that led to his arrest; and (2) the

-4-

evidence was sufficient to sustain the verdict. Petitioner appealed to the Superior Court.

On April 11, 2006, the Superior Court ruled that it could not reach the merits of petitioner's appeal. Instead, the Superior Court ruled that Judge Keogh did not have jurisdiction to reinstate petitioner's appellate rights because his decision was based on an untimely PCRA petition. *Commonwealth v. St. George*, 902 A.2d 982 (Pa. Super. Ct. 2006) (table). The ruling was premised on the one-year statute of limitations for filing a PCRA petition. *See* 42 Pa. C. S. § 9545(b)(1). Specifically, the Superior Court noted that petitioner's judgment of sentence became final thirty days after his December 3, 1997, sentencing. Because no timely appeal or post-sentence motion was filed, petitioner had until January 3, 1999, to file a timely PCRA petition. Thus, petitioner's June 24, 1999, application for leave to file an appeal *nunc pro tunc*—which was eventually treated as a PCRA petition, and then was granted—was time-barred. The Superior Court therefore did not reach the merits of petitioner's appeal, and ruled that "[b]ecause [petitioner's] PCRA petition was untimely, the PCRA court lacked jurisdiction to reinstate his appellate rights. Hence, his appeal must be quashed." *Id.*

On October 23, 2006, petitioner moved this court to reopen his case. Docket No. 50. I granted that request on September 21, 2007, and referred the case to Magistrate Judge M. Faith Angell. Docket No. 52. On October 10, 2008, Judge Angell issued a Report & Recommendation finding that (1) the petitioner was entitled to equitable tolling, but (2) the petition failed to state a cognizable claim. Docket No. 72. Although I agreed that the petition should be equitably tolled, I did not agree that the petition should be

denied for failure to state a cognizable claim.  Instead, because it was apparent that "[p]etitioner's failure to properly plead [ineffective assistance of counsel] in his amended petition shows that petitioner is not capable of adequately representing himself pro se," I directed the Clerk of this Court to arrange for the appointment of pro bono counsel, and I remanded the case to Judge Angell for further proceedings.  Docket No. 78 at 7.

II.     The pending amended habeas petition

On November 25, 2009, petitioner filed, with the assistance of pro bono counsel, an amended petition for writ of habeas corpus.  Docket No. 89.  The amended petition asserts a single claim of ineffective assistance of counsel for failure to file an appeal. After considering the response from the District Attorney of the County of Philadelphia ("respondent"), Judge Angell issued a Report & Recommendation ("the R&R").  Docket No. 98.  Petitioner filed objections, and the matter is now before this court.

As noted above, the issue of equitable tolling has already been resolved in the petitioner's favor.[4]  Moreover, the parties agree that petitioner's claim is procedurally defaulted.[5]  Thus, the only questions before the court are (1) whether there is sufficient

---

[4] A one-year statute of limitations applies to applications for writ of habeas corpus by persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d).  St. George's initial petition was untimely because he failed to file for post-verdict relief at either the state or federal level within one year of the date his conviction became final. However, I previously ruled that St. George was entitled to equitable tolling "because he was misled by the Clerk's failure to properly address his pro se direct appeal.  Docket. No. 78 at 5.

[5] The R&R correctly notes that petitioner's ineffective assistance of counsel claim is procedurally defaulted because "[t]he Superior Court of Pennsylvania refused to address the merits of Mr. St. George's claim pursuant to an independent and adequate

"cause and prejudice" to excuse petitioner's procedural default; and (2) if so, whether petitioner is entitled to an evidentiary hearing to develop factual support for his claim. For the reasons that follow, the R&R will not be adopted and the court will order an evidentiary hearing.

III.  "Cause and Prejudice"

**A. Cause**

"Procedural default may be excused if a petitioner can show 'cause' and 'prejudice' or that a 'fundamental miscarriage of justice' would result." *Wenger v. Frank*, 266 F.3d 218, (3d Cir. 2001) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). Here, the R&R correctly rejected petitioner's argument that "inordinate delay" could, under these circumstances, establish cause. *See* R&R at 8 & n.7.  However, the R&R did not address a second ground for cause that was raised in the petition and then again in the objections to the R&R.  Specifically, petitioner alleges that the repeated mistakes made by the state officials—who failed to notify petitioner that his pro se appeal was untimely—should act to excuse his procedural default. *See, e.g.*, Amended Pet'n at 11 ("[I]f the Court of Common Pleas had not mischaracterized Petitioner's pro se notice of appeal as pertaining to another case, Petitioner would have had plenty of time to file a timely PCRA petition . . . ."). I agree.

In *Coleman v. Thompson*, the Supreme Court held that cause can be established by

---

state procedural rule"—i.e., because petitioner's PCRA petition was untimely under 42 Pa. C.S.A. § 9545(b). R&R at 8.

showing that "some objective factor external to the defense impeded . . . efforts to comply with the state procedural rule."  501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  For example, if a prisoner can show that "'some interference by officials . . . made compliance impracticable,'" a federal court must excuse a procedural default.  *Id.* (quoting *Murray*, 477 U.S. at 488).  In this case, I previously held that, although St. George's initial habeas petition was untimely under AEDPA's one-year statute of limitations, *see* 28 U.S.C. § 2244(d)(1), he was entitled to equitable tolling because "petitioner's appeal should have been promptly dismissed for its tardiness, which would have put him on notice to apply for postconviction relief, [but] this did not occur until after petitioner took the extraordinary step of filing for a writ of mandamus."  Docket No. 78 at 5.  Indeed, even after petitioner filed his untimely PCRA petition on June 24, 1999, the Clerk of Quarter Sessions continued to misinform petitioner about the status of his *pro se* appeal by erroneously telling him, on June 30, 1999, that an appeal had already been filed in the case he sought to appeal.  *See* Pet'r's Ex. 4.

These repeated oversights by state officials made compliance with the PCRA statute of limitations "impracticable," and thus the undisputed facts are sufficient to establish cause for the purpose of excusing procedural default.  *See, e.g.*, *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (prison official's delay in mailing prisoner's pro se application for leave to appeal provided "cause" to excuse default of missing filing deadline); *Johnson v. Champion*, 288 F.3d 1215, 1227–28 (10th Cir. 2002) ("cause" existed for violation of state rule requiring that petition contain certified copy of trial

court's order because of "clerk's failure to mail [prisoner] a certified copy of the court's order" and also because of "clerk's failure to timely transmit the record" to appellate court). In short, the record reflects that "some objective factor external to the defense" precluded petitioner from complying with Pennsylvania's one-year time limit for filing a PCRA petition. The court thus turns to the prejudice prong of the "cause and prejudice" standard.[6]

## B. Prejudice

"Actual prejudice" requires a petitioner to establish that an error caused him "actual and substantial disadvantage." *Murray*, 477 U.S. at 494 (citing *United States v. Frady*, 456 U.S. 152, 170 (1982). When the underlying error is premised on an ineffective assistance of counsel claim, "prejudice under the *Strickland* [*v. Washington*] test is sufficient to establish prejudice to relieve the procedural impediment." *Mincey v. Head*, 206 F.3d 1106, 1147 n.86 (11th Cir. 2000). In other words, the requisite "prejudice" needed to excuse procedural default requires the court to address the merits of St. George's ineffective assistance of counsel claim.

---

[6] The respondents do not dispute that the mishandling of petitioner's pro se appeal impeded him from filing a timely PCRA petition. Instead, respondents seem to argue that the requisite showing for excusing a procedural default should be greater than for the tolling of the federal limitations statute because the default doctrine is grounded in concerns of "comity and federalism," whereas the concerns underlying the limitations statute—i.e., promoting finality and repose—are, according to the respondents, less weighty. This seems unlikely, given that equitable tolling requires a showing of "extraordinary circumstances." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). And in any event, whether or not the degree of impediment differs under each doctrine, the court finds that petitioner has satisfied both.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that every criminal defendant has a constitutional right to "reasonably effective [legal] assistance." *Id.* at 687. Under *Strickland*, an attorney renders ineffective assistance when his performance "f[alls] below an objective standard of reasonableness," given the particular circumstances of the case. *Id.* at 688. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court applied *Strickland* to an attorney's failure to file a notice of appeal. Specifically, the Court recognized that a lawyer who disregards his client's explicit instructions to appeal renders ineffective assistance. *Id.* at 477. In such a situation, prejudice is presumed. *See Solis v. United States*, 252 F.3d 289, 293–94 (3d Cir. 2001) ("Prejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client.").[7]

In this case, petitioner contends that trial counsel was ineffective for failing to file an appeal in response to petitioner's request that he do so. Because the record, as it stands, is insufficient to establish whether petitioner asked trial counsel to file an appeal, the resolution of this case turns on whether petitioner is entitled to an evidentiary hearing. The R&R simply concluded that petitioner "failed to adequately support his claim," and it did not address petitioner's request for an evidentiary hearing. R&R at 8 n.8. Accordingly, the court turns to that question.

---

[7] In *Flores-Ortega*, the court outlined the proper analysis in situations in which the defendant does not allege that he instructed counsel to appeal, but instead alleges that counsel failed to consult with the defendant regarding the possibility of appealing. 528 U.S. at 478–80. Here, petitioner does not allege that his counsel failed to consult.

IV.     The availability of an evidentiary hearing

As a threshold matter, respondents contend that an evidentiary hearing is barred by 28 U.S.C. § 2254(e)(2), which was passed in 1996 as part of the Antiterrorism and Effective Death Penalty Act (AEDPA). Under that provision, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless certain circumstances, which are inapplicable to this case, are present.[8] In *Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court explained that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See also id.* at 430 (noting that "'failed to develop' implies some lack of diligence" on petitioner's part). Here, it is not disputed that St. George was, at one point, permitted to file a PCRA petition in state court—which was initially granted, but late ruled untimely—in which he argued that trial counsel was ineffective for failing to file an appeal. *See* Docket No. 95-1 (Amended Petition for Reinstatement of Appellate Rights Nunc Pro Tunc, May 15, 2003).

---

[8] Petitioner contends that § 2254(e)(2) does not apply to his effort to demonstrate cause for excusing his procedural default. Though petitioner is correct that the "plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level," *Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002), the court has already concluded that there is sufficient cause to excuse the procedural default. As noted above, under the prejudice prong, the court must examine the *merits* of petitioner's claim and, accordingly, § 2254(e)(2) is a potential bar. *Cf. Holloway v. Horn*, 355 F.3d 707, 716 (3d Cir. 2004) ("[I]t is within a District Court's authority to grant a hearing on a petitioner's ability *to establish cause to excuse a procedural default*, and therefore § 2254(e)(2) is inapplicable to those hearings." (emphasis added)).

And it is true, as the respondent points out, that St. George's PCRA counsel did not request an evidentiary hearing or otherwise develop the factual record. But St. George did not need further factual development in the PCRA court in order to get, at least temporarily, the relief he sought. To penalize him for failing to develop a factual basis—when such a factual basis was unnecessary to obtain the relief he sought—would not only be inequitable, but would be contrary to the Court's instruction that "fail" in the context of § 2254(e)(2), "connotes some omission, fault, or negligence on the part of the person who has failed to do something." *Williams*, 529 U.S. at 431. Accordingly, § 2254(e)(2) does not bar an evidentiary hearing in this case.

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). That discretion requires courts to "determine whether the petition presents a prima facie showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim." *Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010). The Third Circuit has also instructed that in exercising the discretion to hold an evidentiary hearing, courts should "focus on whether [such] a . . . hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000).

In the case at hand, petitioner presents his recollection that, after sentencing, he asked trial counsel to file an appeal on his behalf. Petitioner also points to transcript from

the sentencing hearing at which trial counsel stated his intention to appeal. Although petitioner's allegation is terse, it is a quintessentially factual allegation that, if true, would entitle petitioner to relief. *See Solis*, 252 F.3d at 294 ("In this case, Solis claims that he directed his attorney to file an appeal, but that his attorney failed to comply. On its face, this creates a question of fact whether Solis directed his attorney to file an appeal.").[9] Respondents present no allegations or evidence to the contrary, and instead note, "We simply do not know, at this late date, what discussions may or may not have occurred between petitioner and his trial counsel in the thirty days following the sentencing hearing." Docket No. 95 at 26. In light of that uncertainty, and because petitioner has made an adequate factual allegation, an evidentiary hearing has "the potential to advance petitioner's claim." Accordingly, petitioner's request for an evidentiary hearing will be granted.

An appropriate order accompanies this memorandum.

---

[9] In *Solis*, the Third Circuit reversed the district court's refusal to hold an evidentiary hearing. It should be noted that Solis was a federal defendant petitioning for relief under 28 U.S.C. § 2255, and that the availability of evidentiary hearings under § 2255 is considerably more generous than under § 2254. Nevertheless, the Third Circuit's analysis of the factual dispute before it is relevant to the parallel dispute in this case.