IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PERCY ST. GEORGE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE DISTRICT ATTORNEY OF** | : | |
| **THE COUNTY OF PHILADELPHIA,** *et al.* | : | **NO. 00-1716** |

## MEMORANDUM OPINION

**Savage, J.**                                                   **August 2, 2012**

      In this habeas case brought under 28 U.S.C. § 2254, there is no real dispute that petitioner's former attorney was ineffective when he failed to file a timely appeal after informing the sentencing court that he intended to do so and failed to consult with the petitioner about filing an appeal. The disagreement is over what the appropriate relief is. Petitioner contends he should be permitted to file an amended habeas petition in the federal court without having to exhaust his state remedies through the appellate process. The respondents, on the other hand, argue that his remedy is the reinstatement of his state appellate rights.

      We conclude that the petitioner's attorney was ineffective and petitioner is entitled to relief. Therefore, we shall conditionally grant the petition for a writ of habeas corpus and vacate petitioner's convictions unless respondents reinstate his direct appeal so that he may have his claims decided on the merits and not on procedural grounds.

**Background**[1]

On October 22, 1997, a jury convicted Percy St. George of kidnapping, robbery and related offenses in the Philadelphia Court of Common Pleas.[2] On December 3, 1997, Common Pleas Judge Anthony J. DeFino sentenced St. George to an aggregate fifteen-to-thirty year term of imprisonment. St. George is currently serving that sentence.

St. George's trial counsel did not file a notice of appeal within thirty days of the imposition of his sentence. On February 25, 1998, after the deadline for perfecting an appeal had passed, St. George filed a *pro se* notice of appeal

Through an administrative error, the Clerk of the Court of Common Pleas docketed St. George's appeal in an unrelated case in which he was a defendant. This mistake resulted in many months of delay, during which St. George attempted to discern the status of his appeal by corresponding with the Clerk's office. On June 24, 1999, St. George filed an application for a *nunc pro tunc* appeal. Because no action was taken, he filed a petition for mandamus in the Pennsylvania Supreme Court which was denied on February 29, 2000. Remarkably, the state court reflects no activity between December 3, 1997, the date of sentencing and July 2, 2002, when new counsel was appointed.

On April 3, 2000, acting *pro se*, St. George filed his initial habeas corpus petition in the federal court. His habeas case was stayed pending the disposition of his PCRA petition.

On May 15, 2003, new court-appointed counsel filed an amended PCRA petition

---

[1] We give only a brief summary of the state and federal court proceedings here. The proceedings are summarized at greater length in the two previous opinions in this case, and in the Report and Recommendation by United States Magistrate Judge M. Faith Angell. *See* Document Nos. 102, 78, & 72.

[2] Case No. CP 97-04-0523.

requesting reinstatement of petitioner's appellate rights. On April 29, 2004, the PCRA court granted St. George's application, reinstated his right to appeal *nunc pro tunc*, and appointed appellate counsel to represent him. St. George then proceeded to file a notice of appeal and a brief in the Superior Court. On April 11, 2006, the Superior Court dismissed St. George's appeal, ruling that his PCRA petition had been filed too late and the PCRA court did not have jurisdiction to reinstate his appeal rights.

After the Superior Court issued its decision finding that St. George's PCRA petition was untimely, St. George moved to reopen his federal habeas case.[3] His motion was granted.

In an opinion issued on March 30, 2009, District Judge Louis H. Pollak ruled that St. George was entitled to equitable tolling because the delay was caused by the Clerk of Courts' administrative error confusing St. George's two cases.[4] On November 25, 2009, St. George, with the assistance of appointed counsel, filed the amended petition for writ of habeas corpus that is currently before us.

*Evidentiary Hearing*

At the evidentiary hearing held on November 17, 2011, St. George and his former attorney both testified about their recollections of their conversations, particularly as they related to St. George's desire to file an appeal. St. George testified that he did not remember speaking with his trial counsel prior to trial about filing an appeal. Nor did St.

---

[3] Under *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004), habeas petitioners are not required to petition the Pennsylvania Supreme Court for allocatur in order to exhaust state court remedies for purposes of seeking habeas relief in federal court.

[4] This case was originally assigned to Judge Pollak. It was reassigned on May 22, 2012, after Judge Pollak's death.

George recall speaking with his counsel about filing an appeal after the verdict and before his sentencing. He recalled a meeting with his counsel to discuss a plea offer which counsel encouraged him not to take because it would have exposed him to a sentence of 50 to 100 years.

What St. George did remember is significant. He testified that his attorney informed Judge DeFino at sentencing that St. George intended to appeal his conviction. The transcript of the sentencing confirms St. George's recollection of what his attorney represented to Judge DeFino. Addressing the court, counsel represented:

> We will of course have issues that we are going to take up on post-trial motions and on appeal concerning this matter. . . . As you know, he stands convicted. You know we went to trial in the matter. He maintained that he was innocent, still maintains his innocence, went to trial, went before the Court. And the jury came back with the decision that they made. He stands here and he understands that he is going to have to, you know, be sentenced on this today and we will preserve our post-trial, you know, post-sentence motions and of course appeals to the superior court.[5]

St. George testified that after sentencing he wrote to his attorney inquiring about the status of his appeal. His letter "came back return to sender." St. George concluded from the returned letter that "he didn't file it." St. George then filed an appeal on his own behalf.

According to St. George, he had no contact with his attorney until the two men met about an unrelated case approximately five months after his sentencing. According to St. George, at that meeting, he asked his counsel why he had not filed a notice of appeal. Dissatisfied with the answer, St. George filed a motion to have him removed from the unrelated case.[6]

---

[5] Sentencing Transcript, at 36-37.

[6] *Id*.

4

St. George's trial counsel testified that he did not recall asking St. George whether he wanted to file an appeal. He explained that when he went to St. George's house to return some of his clothes, he spoke to a "young lady" there, whom he believed to be St. George's "friend or girlfriend." From this conversation, he assumed "they were getting an appeals counsel."[7] Counsel elaborated:

> Now, Mr. St. George did not tell me that he—he was using someone else or anything of that nature, but that person may have mentioned it to me. Past that, as I told both the—yourself and the District Attorney, I don't have any, you know, pure recollection as to what happened after that.[8]

Counsel's testimony regarding this conversation with the "young lady" was vague and inconclusive. There was no time frame, that is, whether it occurred before or after the time for taking an appeal. His recollection of the content of the conversation was not definite. Counsel could not recall that the female, whose relationship to St. George he did not know, specifically told him that another lawyer had been retained to file an appeal. He acknowledged that he did not make any effort to contact St. George to find out whether St. George actually planned to retain a different attorney to represent him in his appeal. In short, counsel did not consult with his client about his appellate rights.

Counsel admitted that he typically would file a notice of appeal after making a representation like the one he made to Judge DeFino. He did not remember making a decision not to file a notice of appeal.

On cross examination, St. George's counsel testified that at the time of St. George's conviction, it was not his general practice to file a notice of appeal absent a specific request

---

[7] *Id.* at 23-24.

[8] *Id.* at 23.

from the defendant. He did not remember whether St. George requested him to file one.

## Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that criminal defendants are entitled to "reasonably effective assistance" of counsel under the Sixth and Fourteenth Amendments. *Id.* at 687. To establish ineffectiveness under *Strickland*, a defendant must demonstrate that (1) counsel's legal representation "fell below an objective standard of reasonableness," and (2) the unreasonable representation prejudiced the defendant. *Id*. at 694. These two prongs of the *Strickland* analysis are commonly referred to as "cause" and "prejudice."

### *Cause*

It has long been established that it is professionally unreasonable for a lawyer to ignore a defendant's specific instruction to file a notice of appeal. *Rodriquez v. United States*, 395 U.S. 327 (1969). In the present case, there is no evidence that St. George specifically instructed his counsel to file an appeal. Nor is there evidence suggesting that St. George instructed his counsel not to file an appeal. The evidence does show that St. George reasonably relied upon his attorney's representation to Judge DeFino that he would be filing an appeal; and, in reliance on that statement, St. George did not feel the need to affirmatively direct his attorney to file one.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that if a defendant has not instructed an attorney to file an appeal, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. *Flores-Ortega* defines consulting as "advising the defendant

about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.  Neither St. George nor his attorney could recall any conversation regarding the filing of an appeal at any time.

The inquiry under *Flores-Ortega* does not, however, end with the determination that counsel did not consult with the defendant about filing a notice of appeal.  The Court in *Flores-Ortega* declined to adopt a bright-line rule that counsel always has a duty to consult with a defendant about filing an appeal.  *Id*. at 481.  Rather, the Court held that where counsel did not consult with the defendant about filing an appeal, counsel's performance is objectively unreasonable if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480.

The fact that St. George maintained his innocence and decided to go to trial, rather than the government's plea offer, would have demonstrated to any attorney that he desired to appeal his conviction, imposing upon counsel the obligation to consult with him to discuss his options.  In *Flores-Ortega*, the Court observed that "whether the conviction follows a trial" is a "highly relevant," although "not determinative," factor in the inquiry into whether counsel had a duty to consult with a defendant about filing an appeal.  *Id.* at 480.  On the other hand, "a guilty plea reduces the scope of potentially appealable issues and . . . may indicate that the defendant seeks an end to judicial proceedings." *Id*.  A defendant who claims innocence, as does St. George, is likely to want to appeal his conviction.  Indeed, after having been convicted, St. George insisted on his innocence.

Counsel's statements to Judge DeFino at sentencing reflect that he believed that

there were meritorious issues for appeal and that St. George had conveyed to him a desire to file an appeal. In *Hodge v. United States*, 554 F.3d 372 (3d Cir. 2009), the court determined that it need not resolve a factual dispute about whether Hodge had asked his counsel to file an appeal because "[n]obody contends that Hodge told his lawyer that he did not want to appeal," and if "counsel was unsure about Hodge's wishes . . . any doubt under these circumstances should have been resolved in favor of appeal." *Id*. at 380. Here, as in *Hodge*, any doubt that counsel might have had with regard to St. George's intentions should have been resolved in favor of filing an appeal. Even if counsel, based on his secondhand conversation with the "young lady" at St. George's house, believed that St. George did not want his assistance in filing an appeal, counsel had an obligation to confirm that belief with his client. He did not do so. Thus, St. George has demonstrated that his attorney's representation of him "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.[9]

## *Prejudice*

Under *Flores-Ortega*, a defendant has shown prejudice "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken." 528 U.S. at 484. Because counsel's unreasonable failure to file a notice of appeal results in the forfeiture of the proceeding itself, a defendant need not "demonstrate that his hypothetical appeal might have had merit." *Id*. at 483, 486. Rather, the defendant need only show that "but for counsel's deficient conduct, he would have appealed." *Id.*

---

[9] In their memorandum of law filed after the evidentiary hearing, respondents conceded that "[t]he record developed at the evidentiary hearing . . . does . . . tend to support a claim . . . that [counsel] never specifically *consulted* with petitioner concerning the filing of an appeal, but had been under the impression as of the time of sentencing that petitioner wished to appeal, and that counsel never received any instructions to the contrary from petitioner" in violation of *Flores-Ortega*. Document No. 126, 4-5.

In the present case, St. George's desire to file an appeal has been more than sufficiently demonstrated by the unsuccessful *pro se* appeal he filed shortly after the deadline for filing an appeal lapsed, his subsequent correspondence with state court personnel regarding the status of his *pro se* appeal, and his attempt to file an appeal *nunc pro tunc*. The record leaves no doubt that St. George would have taken an appeal had it not been for counsel's constitutionally deficient performance of his duty to St. George. Therefore, St. George has shown prejudice.

## Requested Relief

The parties disagree what the appropriate relief is. Respondents point out, and St. George does not dispute, that a conditional writ ordering that the defendant be released unless his direct appeal rights are reinstated is the usual and preferred remedy for a *Flores-Ortega* violation.[10] *See, e.g.*, *United States v. Shedrick*, 493 F.3d 292, 303 (3d Cir. 2007) ("[W]e will follow the usual course in cases of this nature: vacate and remand for re-entry of the initial sentence so that there can be a timely appeal"); *Hodge*, 554 F.3d at 382 (vacating sentence and remanding for reentry of sentence to permit defendant opportunity to file direct appeal); *Lewis v. Johnson*, 359 F.3d 646, 662 (3d Cir. 2004) (instructing the district court to "issue a writ of habeas corpus conditioned on the Commonwealth's reinstatement of Lewis's right of first appeal").

Citing the years of delay, St. George requests that we retain jurisdiction over his habeas petition and permit him to file a new or supplemental petition in this court raising any claims for relief he may have under state or federal law. In other words, he seeks to avoid

---

[10] Document No. 126, at 6.

a return to the state court system and additional delay. He asks us to excuse the exhaustion requirement.

Generally speaking, "a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal." *Lee v. Stickman*, 357 F.3d 338, 341 (3d Cir. 2004) (citations omitted); *see also* 28 U.S.C. § 2254(b), (c). Because the Superior Court ruled that St. George's PCRA petition was time-barred, it has not yet reached the merits of St. George's appeal. Significantly, we do not know what grounds for relief St. George intends to raise.

Acknowledging that his claims for relief have not been exhausted, St. George points out that the exhaustion requirement "is not jurisdictional, but a matter of comity." *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994) (citation omitted). St. George argues that we should excuse the exhaustion requirement in his case based on the delay he experienced in obtaining appellate review of his conviction and sentence.

The failure to exhaust state remedies may be excused if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The Third Circuit has held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir.1986). Here, there is an available state process in a direct appeal through which St. George may assert his claims.

St. George relies upon *Lee*, 357 F.3d 338 and *Heiser v. Ryan*, 15 F.3d 299 (3d Cir. 1994). In *Lee,* the court concluded that the petitioner, whose PCRA petition had been pending in the Pennsylvania state courts for almost eight years at the time he filed his

federal habeas corpus petition, "should be required to wait no longer." 357 F.3d at 343-44. The Third Circuit remanded Lee's case to the district court to "entertain his petition on its merits." *Id*. at 344. In *Heiser*, the petitioner's motion to withdraw his guilty plea remained pending at the time of habeas review, over eleven years after the motion was filed and four years after his PCRA petition was filed. 15 F.3d at 302. Heiser argued that this delay entitled him to immediate discharge from custody. *Id*. at 304. The Third Circuit disagreed, noting with approval that "[b]ecause of the delay in the state courts' consideration of Heiser's motion to withdraw his guilty plea, the federal district court in effect sat as the substitute and gave Heiser the proceeding to which he was entitled." *Id.* at 307. The district court proceeding was an evidentiary hearing held for the purpose of determining whether Heiser's attorneys had threatened to withdraw unless Heiser pled guilty. *Id.* at 302.

Respondents argue that *Heiser* is inapposite because St. George, unlike Heiser, has "no real claim of inordinate delay."[11] We disagree that there was not an inordinate delay. Through no fault of his own, his case remained pending in the Pennsylvania courts for over eight years, from the February 25, 1998 filing of his *pro se* appeal to the April 11, 2006 decision by the Superior Court that his PCRA petition was time-barred. Respondents quantify the length of the delay differently. They point out that once the confusion between St. George's two cases was resolved and the state courts decided to construe his application to file an appeal *nunc pro tunc* as a PCRA petition, only four years passed before the Superior Court issued its decision. Whether four years or eight years, the delay is significant. *Cf. Wojtczak*, 800 F.2d. at 354 (excusing exhaustion based on 33 month delay

---

[11] Document No. 126, at 9.

in adjudicating PCRA petition).

Respondents also point out that St. George, unlike Heiser and Lee, "has no claims pending in the state courts."[12]  The court in *Heiser* noted that "the habeas courts ordinarily have fashioned a remedy designed to spur the state courts to fulfilling their constitutional obligations to the defendant." 15 F.3d at 306 (citations omitted).

In both *Lee* and *Heiser*, the exhaustion requirement was excused with respect to claims that had already been presented in federal court.  St. George, by contrast, has not filed a new or supplemental habeas petition raising any claims he may have under state or federal law.  There are no pending claims in either the state or the federal courts.

We conclude St. George has a constitutional right to pursue the appeal of his conviction and the state courts have an obligation to decide the appeal on the merits and not on a procedural basis.

Because reasonable jurists could disagree as to whether the state court delay was so inordinate as to excuse the exhaustion requirement, we shall issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *United States v. Eyer*, 113 F.3d 470, 473 (3d Cir. 1997).

## Conclusion

We conclude that in failing to consult with St. George about the possibility of filing an appeal, even though he knew or should have known that St. George desired to appeal, St. George's attorney failed to provide him with objectively reasonable legal representation. Because counsel's deficient performance deprived St. George of an appeal that he

---

[12] *Id*.

otherwise would have taken, St. George is entitled to habeas corpus relief.  Therefore, we shall grant St. George's petition for a writ of habeas corpus and vacate his conviction unless respondents reinstate St. George's direct appeal within 30 days of the date of this opinion.